**MOON, PLASTER & SWEERE, L.L.P., Plaintiff–Respondent,**

v.

**Edwin Mitchel KELLEY, Defendant–Appellant.**

**No. SD 32500.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 15, 2013.

Greg R. Bridges, Neosho, for Appellant.

Raymond I. Plaster, Springfield, for Respondent.

NANCY STEFFEN RAHMEYER, P.J.

On September 27, 2010, Moon, Plaster & Sweere, L.L.P. ("Plaintiff Partnership") filed a petition in the associate circuit division of the circuit court seeking to collect a "debt" in the amount of $14,371.53 for "legal services performed" for Edwin Mitchel and Dixie Rae Kelley.[1] The petition stated "Plaintiff is a Missouri partnership in good standing." Raymond I. Plaster ("Plaster") signed the petition as counsel, and, following his signature, stated under oath that he was a "partner" of Plaintiff Partnership, and that "the facts and allegations contained [in the petition were] true and correct, according to [his] best ... knowledge and belief." An exhibit to the petition indicated the legal services were rendered from September 2003 to December 2005. Counsel for Defendant entered his appearance in the suit on Jan-

---

1. Although Plaintiff Partnership's Petition named both Edwin and Dixie Kelley as defendants, the trial court's docket sheet indicates that service of the summons on Dixie Kelley was "non est" due to her being deceased; therefore, Edwin Mitchel Kelley will be referred to herein as the sole "Defendant."

uary 11, 2011; however, no responsive pleading or written motion was filed specifically denying Plaintiff Partnership's legal capacity to sue, or Plaster's status as a partner of Plaintiff Partnership.

At the beginning of a trial to the court on November 15, 2012, counsel for Defendant orally moved to "dismiss" the petition because "[counsel thought Plaintiff Partnership] was terminated in November of '05" with the result that "there's not a proper party [p]laintiff in that [Plaintiff Partnership] cannot sue." Counsel for Defendant also noted "[Plaintiff Partnership] was briefly reinstated, and then also registered with the Secretary of State is a certificate of withdrawal of the partnership."

Plaster, as counsel for Plaintiff Partnership, replied:

It's been dissolved and terminated. There's no question about that. This is the last basic asset that is left of the law firm that I was given the task of the pleading since it was my client. But he is correct, Judge, that [Plaintiff Partnership] has been—is in dissolution. Because it's been placed in dissolution doesn't mean (indiscernible) continue on.

Plaster stated he "object[ed] to the assertion of any kind of affirmative defense as to the LLP status" because no "answer" or "affirmative defense" had been "filed."

The trial court ruled that "this would be something of winding up of the LLP's business, so you'd have the authority to proceed with that." Plaster was not sworn in as a witness,[2] but evidence consisting of judicial and business records showing the services rendered and the value of those services was admitted without objection. Defendant had no memory of the terms of any agreement with the law firm, but did not have any "dispute" as to the fees claimed.

Following Plaintiff Partnership's presentation of evidence, counsel for Defendant moved for a "directed verdict" in part because "there's no party plaintiff. There is no plaintiff, so there was nobody to sue in this case." The trial court denied that motion. Shortly after trial and before judgment, counsel for Defendant renewed his oral objections at trial in a letter stating that Plaintiff Partnership "cannot legally sue" Defendant, and "is not a proper party" because Plaintiff Partnership "no longer exists, as [it] was dissolved in 2005."

 The trial court rendered judgment in favor of Plaintiff Partnership in the amount of $20,547.91 (this amount includes prejudgment interest in the amount of $8,240.35).[3] After judgment, counsel for Defendant renewed his previous objections and added a claim that Plaintiff Partnership had "no standing" in a motion for new trial. In his motion for new trial and in the last paragraph of the argument portion of his brief, Defendant asserted that Plaintiff Partnership lacked "standing." Defen-

---

**2.** See *Dickerson v. Dickerson*, 55 S.W.3d 867, 874 (Mo.App. W.D.2001) ("Even when attorneys testify as witnesses, their testimony must be given under oath, as any other witness."); *In re Marriage of Gustin*, 861 S.W.2d 639, 646 (Mo.App. W.D.1993) ("When attorneys testify as a witness, their testimony must be given under oath as in the case of any other witness."); *Ezenwa v. Dir. of Revenue, State of Mo.*, 791 S.W.2d 854, 859 (Mo.App. W.D. 1990) ("Unsworn statements of trial counsel do not prove themselves or constitute evi-

dence."); and *Smith v. Sayles*, 637 S.W.2d 714, 717 (Mo.App. W.D.1982) (finding the statements of counsel were gratuitous where "[t]hey were not given on oath or as a witness and therefore were neither self-verified nor evidence.").

**3.** By its terms, the judgment is against only Edwin Mitchel Kelley. As previously noted, Dixie Rae Kelley was deceased at the time Plaintiff Partnership filed suit.

dant interchanges two concepts: capacity to sue and standing.

> "Capacity to sue refers to the status of a person or group as an entity that can sue or be sued, and is not dependent on the character of the specific claim alleged in the lawsuit[.] . Standing to sue evaluates the sufficiency of a plaintiff's interest in the subject of the lawsuit. It is a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court[.] Objections to standing, unlike objections based on the real party in interest rule, cannot be waived[.]"

*City of Wellston v. SBC Communications, Inc.*, 203 S.W.3d 189, 193 (Mo. banc 2006) (quoting 15 Mo. Prac. Civil Rules Practice sec. 52.01–2 (Mary Coffey ed., 2d ed.1997) (footnote omitted)). Defendant's "standing" argument clearly is an argument that Plaintiff Partnership did not have the legal capacity to sue, and is not an argument that it did not have an interest in the subject of the lawsuit (i.e., standing).

 In a single point relied on, Defendant claims that "[t]he trial court erred in finding that [Plaintiff Partnership] was a proper party plaintiff since [Plaintiff Partnership's] registration as an LLP had been terminated prior to the filing of the instant lawsuit and thus [Plaintiff Partnership] had no legal capacity to file suit." Lack of legal capacity to sue is an affirmative defense. *Unifund CCR Partners v. Kinnamon*, 384 S.W.3d 703, 705–06 (Mo.

App. W.D.2012) (indicating that a general partnership's lack of legal capacity to sue is an affirmative defense). We cannot address Defendant's claim because Defendant did not preserve the claim by filing a motion challenging Plaintiff Partnership's capacity to sue, thus raising it as an affirmative defense.

 In associate circuit division cases, section 517.021 provides "[t]he rules of civil procedure shall apply . . . except where otherwise provided by law."[4] Section 517.031.2 further provides in part: "Affirmative defenses, counterclaims and cross claims shall be filed in writing not later than the return date and time of the summons unless leave to file the same at a later date is granted by the court. No other responsive pleading need be filed."[5] In addition, Rule 41.01(d) provides in part "[c]ivil actions pending in the associate circuit division shall be governed by Rules 41 through 101 except where otherwise provided by law." In turn, Rule 55.27(a)(3), (f) and (g)(1)(E) generally require a defendant in the associate circuit division to raise the defense a plaintiff does not have legal capacity to sue "[w]ithin the time allowed for responding to the opposing party's pleading."[6] *KMS, Inc. v. Wilson*, 857 S.W.2d 525, 526–29 (Mo.App. W.D.1993) (in the associate circuit division, affirmative defenses must be filed in accordance with "Rule 41.01(f) [now 41.01(d)] and § 517.031.2"); *Pemiscot County Memorial Hospital v. Bell*, 770 S.W.2d 499,

---

**4.** All references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules (2013), unless otherwise specified.

**5.** Even when facts constituting an affirmative defense do not exist by the return date, the defendant is required to obtain leave of the trial court to file the affirmative defense at a later date. A motion filed in the associate circuit division "[j]ust before trial" raising an affirmative defense is not timely where the

defendant could have asserted the affirmative defense earlier. *Stine v. Warford*, 18 S.W.3d 601, 603, 604 (Mo.App. W.D.2000).

**6.** *See also* Rules 55.08 (affirmative defenses), 55.13 ("specific negative averment" necessary to raise issue of a party's capacity to sue), and 55.14 (under certain conditions, "existence of the partnership" "deemed confessed unless" denied by "specific negative averment").

502 (Mo.App. S.D.1989) (in the associate circuit division, a defendant must assert plaintiff's lack of capacity to sue by pleading or motion under Rule 55.27)

As a result, by waiting until the beginning of trial to raise orally the affirmative defense that Plaintiff Partnership lacked the legal capacity to sue, Defendant failed to raise the defense timely and forfeited his right to assert the defense. Plaintiff Partnership objected to Defendant raising the defense at that point and, therefore, Defendant's failure to raise the defense timely was not excused by trial of the defense by consent. *Stine,* 18 S.W.3d at 604–05. Consequently, the trial court did not err in entering judgment in favor of Plaintiff Partnership.

Defendant's point is denied. The trial court's judgment is affirmed.

WILLIAM W. FRANCIS, JR., C.J., and DANIEL E. SCOTT, J., Concur.